[Civ. No. 7133.   Third Dist.   May 4, 1945.]

CHARLES M. CARTER et al., Appellants, v. BANK OF AMERICA NATIONAL TRUST & SAVINGS ASSOCIATION (a National Banking Association) et al., Defendants; ARROYO DITCH COMPANY (a Corporation), Intervener and Respondent.

M. F. Ryan for Appellants.

Henry S. Lyon and Thos. R. White for Respondent.

ADAMS, P. J.—Plaintiffs brought this action to recover the sum of $1,295.03 on deposit with defendant The Bank of America National Trust and Savings Association. The complaint alleged that plaintiffs, in 1940, had leased to the Greenhorn Dredging Company, a copartnership, what was described as the North Star Mining Claim, being the S½ of the SW¼ of the SE¼ and the S½ of the S½ of the SW¼ of Section 17, and the S½ of the SE¼ of the SE¼ of Section 18, all in T. 9 N., R. 12 E., M. D. B. & M.; that the lease provided for royalty payments to plaintiffs, and that the $1,295.03 which they sought to recover represented royalty payments, which, pursuant to the terms of the lease, had been deposited by lessees with the Placerville branch of defendant bank, for the account of plaintiffs.

Arroyo Ditch Company, a corporation, filed a complaint in intervention, setting up a lease from the Greenhorn Dredging Company to the Arroyo Mining Company, which lease, it was alleged, had been assigned to intervener; and it claimed that the $1,295.03 in controversy represented royalties from gold that had been mined from land demised under the aforesaid lease and not from land leased by plaintiffs. It asserted (Par. X) that plaintiffs wrongfully claimed adversely to them because of a dispute and an uncertainty as to the location and position of the southerly boundary of sections 17 and 18 and the northerly boundary of sections 19 and 20, T. 9 N., R. 12 E., M. D. B. & M. Plaintiffs answered the complaint in intervention, admitting its allegations in part but denying those contained in paragragh X as above set forth. Apparently no answer was filed by defendant bank, but it was stipulated by its counsel and counsel for plaintiffs and the intervener, that the moneys in controversy should be held by said bank, to be paid by it to whoever should be found by the court to be entitled thereto.

The cause was tried by the court sitting without a jury, and it was stipulated that if the location of the line between section 17 and section 20 was as contended by intervener, the gold had been taken from property held by Arroyo Ditch Company, but if the location of the line was as contended by plaintiffs the gold had been taken from land belonging to plaintiffs. The trial court found that the line was as contended by intervener and entered judgment in its favor.

On this appeal the sole question is whether there is sufficient substantial evidence to sustain the trial court's finding that ''the section corner common to sections 17, 18, 19 and 20, Township 9 North, Range 12 East, M. D. B. & M., is situated N 00° 3′ West 2631.6 feet from the quarter corner between Sections 19 and 20 and was surveyed by Alexander McKay in 1869, and from the said corner the section line extends easterly South 89° 48′ East and Westerly North 89° 52′ West 2610.9 feet to the quarter corner between sections 18 and 19, and that the NORTH STAR MINING CLAIM does not extend south of said line as in this paragraph described, and said corner and said line are in accordance with the official map and field notes of said section.''

We are unable to see that this appeal presents anything but a question of fact as to what constitutes the true corner

of sections 17, 18, 19 and 20, which question, on conflicting evidence, the trial court has decided in favor of respondent.

Appellants cite section 2077, subdivision 2, of the Code of Civil Procedure to the effect that when permanent and visible or ascertained boundaries or monuments are inconsistent with the measurement, either of lines, angles or surfaces, the boundaries or monuments are paramount. They also quote from 8 American Jurisprudence on Boundaries, section 55, page 785, regarding the preference for artificial monuments over other calls; section 60, page 788, to the effect that calls in a survey for marked lines and corners, being based upon monuments, prevail over calls such as those for courses and distances; and section 61, page 788, stating that a corner established by the government surveyors with reference to which patents have been issued should be accepted as the true corner and given controlling effect without regard to whether or not it was originally located with mathematical exactness, and that an established corner between sections must govern even against other surveys or evidences tending to prove that such corner should be located elsewhere. Some other authorities to the like effect are cited, but they are all beside the point, for the question in this case is which of two mounds constitutes, in fact, the true monument marking the disputed corner. The decision in the early case of *Hubbard* v. *Dusy*, 80 Cal. 281 [22 P. 214], is applicable here. There the location of a township line was in dispute. The court gave to the jury two instructions as follows:

"Monuments left by the United States survey on the grounds are the best evidence as to where the land should be, and any monument so established can only be antagonized by evidence of other monuments. As between different monuments, the jury should look to the evidence identifying them, and those monuments best identified should prevail, independent of anything even in the field-notes of the original or any subsequent survey."

"I further instruct you, in case there are two lines of monuments, or supposed monuments, so located as to render it doubtful which is the true line of government monuments, then, other things being equal, the monuments, or line of monuments, most nearly conforming to the field-notes would be most likely to be, and would be considered to be, the true government corner or corners."

On appeal it was contended that such instructions were

erroneous, but the court held that they correctly stated the law bearing on the case.

The record before us shows that plaintiff Carter located a mound of stones with an old wooden stake inscribed 17, 18, 19 and 20, which he claims constitutes the original monument. Elmer J. Kent, County Surveyor of El Dorado County, a witness for intervener, located a different mound of stones with a rotted stake, also marked 17, 18, 19 and 20, which he took to be the original monument; and he was of the opinion that what Carter claimed to be the corner monument was merely a witness corner which had been established subsequent to the original survey. Both he and Walter H. Ralph, a civil engineer and surveyor called by respondent, testified that Carter's corner did not correspond to the requirements or the usual markings of a government corner, while the corner monument found by Kent more nearly corresponded with the field notes. Ralph testified that the corner claimed by Carter fell 300 feet or 400 feet short according to the field notes, when measured from the established corner directly south; also that if Carter's corner were adopted, a line run easterly therefrom, instead of ending at a point 700 feet north of the river, as called for in the field notes, would end in the center of the river—that is, it would deviate 700 feet from the line called for by the field notes, while a line run by Ralph east from the corner found by Kent came to the exact location called for in the field notes.

The location of the true corner thus became a matter for determination by the trial court upon conflicting evidence. It was stated by it in an opinion delivered orally:

"Where is that corner? As I said that area is more or less in a rugged country. There is a precipitous mountain stream going down through there. As to the location, we have to measure that by the positive evidence. The positive evidence is by Kent, that he found the corner, and that his corner coincides with the field notes of the United States. The field notes are a part of the survey. Every engineer and every surveyor knows that. The testimony was that this corresponds with the field notes. Different statements are made in United States reports about quarter corners and it is said that the old surveys are frequently not accurate. Nevertheless, in a case of this kind, the entire picture has to be brought in, and here we have some testimony that a certain quarter corner confirms Kent's views. Ralph takes the same position.

This case has to be decided by a preponderance of the evidence,—determining the rights of these parties on the turning point of the common corner of these four sections. On that positive testimony that the corner must be where Kent found it, then comes the question whether any value is to be attached to the corner that Mr. Carter assumed.''

It was then concluded that Carter's corner was a witness corner, same being in a position where it would be natural to place such a corner; and the court's conclusion was that the preponderance of the evidence supported the contentions of respondent. That conclusion must be the conclusion of this court. The judgment is affirmed.

Thompson, J., and Peek, J., concurred.